**UNITED STATES of America,**
**Plaintiff,**

v.

**Dr. John J. TOMA, Defendant.**

No. 20360.

United States District Court
S. D. California, Central Division.
Feb. 14, 1957.

Laughlin E. Waters, U. S. Atty., Max F. Deutz, Asst. U. S. Atty., Thomas E. Walsh, Atty., Dept. of Justice, Hiram W. Kwan, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff.

Fulwider, Mattingly & Huntley, Robert W. Fulwider, Frederick E. Mueller, Los Angeles, Cal., for defendant.

HARRISON, District Judge.

Plaintiff, United States of America, brings this action to recover amounts paid to defendant by plaintiff in alleged contravention of the dual compensation provisions of the Economy Act of 1932, 5 U.S.C.A. § 59a. Plaintiff alleges that there is due the United States from defendant the sum of $2,757.58 for compensation paid to him as an employee of the Veterans' Administration Hospital at Fort Howard, Maryland, at the rate of $3,000 per annum from July 1, 1951 to March 29, 1952 in the sum of $2,249.90 and at the rate of $3,300 per annum from March 30, 1952 to May 24, 1952 in the sum of $507.68, making a total sum of $2,757.58 as principal, while also receiving Army retirement pay for disability in the monthly amount of $276.72 as a Reserve Officer from the United States Army, and that defendant elected to receive the retired pay. In other words, the government seeks to recover compensation paid to the plaintiff for services rendered and received by it for approximately eleven months. This case does not call for a strained interpretation to permit the government to gain unfair advantage. The government can always afford to be fair. Technicalities under such circumstances do not invite such a construction of a statute.

The applicable statutory provisions, as they existed during the time with which we are concerned, are as follows:

5 U.S.C.A. § 59a provides:

"After June 30, 1932, no person holding a civilian office or position, appointive or elective, under the United States Government or the municipal government of the District of Columbia or under any corporation, the majority of the stock of which is owned by the United States, shall be entitled, during the period of such incumbency, to retired pay from the United States for or on account of services as a commissioned officer in any of the services mentioned in Title' 37, at a rate in excess of an amount which when combined with the annual rate of compensation from such civilian office or position, makes the total rate from both sources more than $3,000.00; and when the retired pay amounts to or exceeds the rate of $3,000.00 per annum such person shall be entitled to the pay of the civilian office or position or the retired pay, whichever he may elect." [June 30, 1932, as amended July 15, 1940].

10 U.S.C.A. § 371b provides:

"No existing law shall be construed to prevent any member of the Officers Reserve Corps or the Enlisted Reserve Corps from accepting employment in any civil branch of the public service nor from receiving the pay incident to such employment in addition to any pay allowances to which he may be entitled under the laws relating to the Officers' Reserve Corps or the Enlisted Reserve Corps, nor as prohibiting him from practicing his civilian profession or occupation before or in connection with any department of the Federal Government." [As amended, July 1, 1947].

Defendant has filed a motion under Rule 12(b), Fed.Rules Civ.Proc., 28 U.S.C.A. to dismiss the complaint for failure to state a claim upon which relief can be granted based upon the contention that 10 U.S.C.A. § 371b exempts him from the operation of the dual compensation provisions of the Economy Act. The case of Tanner v. United States, 125 F.Supp. 240, 129 Ct.Cl. 792, certiorari denied 350 U.S. 842, 76 S.Ct. 83, 100 L.Ed. 751, decided by the Court of Claims in 1954, is cited in support of this proposition.

The government urges that the Tanner case is wrong and should not be followed by this court. This contention is based upon the legislative history and subsequent administrative construction of the sections involved, which reveal, according to plaintiff's argument, that Congress did not intend to exempt retired pay of reserve officers from the provisions of the Economy Act when it enacted § 371b of Title 10 U.S.C.A.

The language of this section, however, is clear and unambiguous. If courts were to allow the tracing of language which plainly dictates a certain result back into the committee rooms of Congress to arrive at an interpretation contradicting the words of the statute, no provision of the United States Code would be free from doubt. Where a legislative enactment is not ambiguous nor its meaning doubtful, the courts will not consider the legislative history in order to reach a result opposed to the plain meaning of the language used. Gemsco, Inc., v. Walling, 324 U.S. 244, 260, 65 S.Ct. 605, 89 L.Ed. 921; Ex parte Collett, 337 U.S. 55, 61, 69 S.Ct. 944, 959, 93 L.Ed. 1207; Sivley v. Commissioner of Internal Revenue, 9 Cir., 75 F.2d 916, 918. The legislative history of an act is admissible as an aid to construction only to solve doubt, not to create it. Railroad Comm. of State of Wisconsin v. Chicago, B. & Q. R. Co., 257 U.S. 563, 589, 42 S.Ct. 232, 66 L.Ed. 371.

Nor can it be said that giving the words their natural meaning leads to unreasonable results at variance with the policy of the legislation as a whole, Acheson v. Fujiko Furusho, 9 Cir., 212 F.2d 284, or brings about an end completely at variance with the purpose of the statute. United States v. Public Utilities Commission, 345 U.S. 295, 73 S.Ct. 706, 97 L.Ed. 1020. That the retired pay of reserve officers should be treated differently from that of regular officers is entirely logical and consistent with the practical realities of the situation.

A consideration of the administrative construction given to the sections in question does not alter the result. The most that can be said about the administrative interpretations referred to here is that no consistent interpretation appears to exist which can be of any help to the court. In addition, although administrative construction of doubtful statutes is entitled to great weight, it will not override the plain meaning of the statute. McClure v. United States, 9 Cir., 95 F.2d 744, affirmed 305 U.S. 472, 59 S.Ct. 335, 83 L.Ed. 296.

Furthermore, this court does not agree with the government's contention that Tanner v. United States, supra, fails to implement the intent of Congress. Nearly two years after that case was decided Congress re-enacted Section 371b of Title 10 in substantially the same language, transferring it to Title 5, U.S.C.A. § 30r(c). Re-enactment of a provision is persuasive evidence that the judicial construction put upon the language accorded with the intent of Congress, even though such construction has never been specifically approved by the Supreme Court. Johnson v. Manhattan Ry. Co., 289 U.S. 479, 500, 53 S.Ct. 721, 77 L.Ed. 1331; Bakelite Corp. v. National Aniline & Chemical Co., 2 Cir., 83 F.2d 176, 177; see 82 C.J.S., Statutes, §§ 212–214, pp. 848–854 for general discussion. A single judicial construction is admittedly not a "well-settled interpretation." But here it must be assumed that Congress was aware of the decision (the only one on point), and Supreme Court's refusal of certiorari, since the case is annotated directly under Section 371b of Title 10 U.S.C.A.

The plain meaning of Section 371b is that *no* existing law shall be construed to prevent a member of the Officers Reserve Corps from receiving compensation for service in the civil branch of the government in addition to pay and allowances to which he may be entitled under the laws relating to the Officers Reserve Corps. Congress has removed any doubt as to the meaning of the term "pay and allowances" by defining the

word "pay" to include "retired pay". 10 U.S.C.A. § 101(27).[1]

Accepting as true all factual allegations of plaintiff and viewing them in the light most favorable to the government, it is clear that no claim for relief has been stated. Judgment of dismissal is hereby directed without leave to amend. Inasmuch as counsel for the government have indicated they have no desire to amend, counsel for the defendant is directed to submit proposed judgment of dismissal under the rules of this court.

---

1. In its revision of Title 10, Congress declared its intention not to change any substantive provisions of the existing law. House Report 970, Senate Report 2484, 84th Congress, 1st Session. It may thus be assumed that this definition was equally applicable under old Title 10.